[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was commenced by the plaintiff against Jill McKeon on December 11, 1992. In the initial complaint, Ms. Dykstra sought a writ of habeas corpus against Ms. McKeon concerning the child Jacob Jezouit, born December 17, 1991, who is the child of Lynne Dykstra and David Jezouit and who was then in the care and custody of Ms. McKeon pursuant to an order of the Probate Court for the District of Berlin. At that time and at the time of the child's birth, both Ms. Dykstra and Mr. Jezouit suffered from addiction to alcohol and used cocaine habitually.
The family was the subject of a custody evaluation ordered by the court in January, 1993. Prior to the completion of the study, however, Ms. Dykstra abducted the child and fled to Illinois, where in September, 1993 she was apprehended and arrested for the CT Page 13954 crime of Custodial Interference in the First Degree, a felony. She was granted accelerated rehabilitation and, after she successfully completed the conditions of her pre-trial probation, the charges were dismissed. The child was returned to Connecticut, and eventually Mr. Jezouit was granted custody of him. Ms. Dykstra was granted supervised visitation. That visitation has occurred on a weekly basis since August 17, 1994. During that period, she and the child have only shared 175 hours of visitation.
Ms. Dykstra and Mr. Jezouit were heard on three days of trial in November, 1998 on Ms. Dykstra's motion to modify visitation and Mr. Jezouit's motion for attorney fees incurred in his defense of the motion. During the hearing, both testified and several witnesses testified concerning Ms. Dykstra's character and efforts at rehabilitation. In addition, a family relations officer familiar with the child and parents testified, and her written report was submitted as a court exhibit. The child's guardian ad litem participated in the proceedings. The court had the opportunity to evaluate the evidence and to observe the demeanor of the parties.
Ms. Dykstra does not seek to have custody of her son, Jacob. She acknowledges that Mr. Jezouit has been a good parent for the child and that he has thrived in his father's care. She seeks, instead, to have expanded and unsupervised visitation with the child so that she can develop a meaningful parent-child relationship with him. Mr. Jezouit agrees that such a relationship must eventually be developed, and acknowledges that at some point in the future the child and Ms. Dykstra will enjoy unsupervised visitation. He is opposed to unsupervised visitation at this time because of the age of the child, the history of Ms. Dykstra's abduction of him, and his concern that she is not entirely free of alcohol. Although he has other, more nebulous concerns about the visitation proposals, his rationale for most of those was not convincing. His central fear is that Ms. Dykstra will abduct the child again.
In deciding custody issues, the court must determine what is in the best interest of the child. While the court must protect the rights of each of the parents and other parties to the action, its ultimate responsibility is to decide what is in the best interest of the child and to fashion orders within the limits of its authority which protect and advance those interests. CT Page 13955
Based upon the evidence presented, the court finds the following.
David Jezouit and Lynne Dykstra have each made substantial, even overwhelming, progress in overcoming past addictions and substance abuse problems. Each provides an example of how far a person can go and how well a person can live once he or she has conquered an addiction or dependency. Mr. Jezouit has not used drugs or alcohol for six and one half years. He has married, has maintained a steady and responsible job, and has purchased a home with his wife. He is active with his son, and coaches some of his sporting activities. He has been a loving and effective parent to Jacob. Ms. Dykstra has maintained steady and responsible employment for the past four years with two respected non-profit organizations. She has been active as a community volunteer, and has earned an opportunity to acquire a home through her work with Habitat for Humanity. She has been a loving and effective parent for her son, Daniel, who is Jacob's half-brother, although she has not had the involvement or support of Daniel's father in that effort. She completed marriage and family therapy which helped her to understand and accept that the responsibility for her abduction of Jacob was her responsibility, rather than the fault of others.
With respect to Ms. Dykstra, however, there are two areas of concern. First, although she testified that she has not used drugs or, with a few exceptions, alcohol for many years, she has never completed a substance abuse counseling program and did not complete a random drug test required of her by the family relations division during the custody evaluation. Since alcohol use can only be ascertained if the substance has been used during the twenty four hours prior to the test, a stall to take the test can lead to a false negative for alcohol use.
In this case, she never completed the required test, although Mr. Jezouit did. Secondly, she acknowledged several instances of alcohol use over the past eighteen months. While such minor alcohol use would not be of great concern in most cases, it is here where both parties are alcoholics subject to relapse at any time. Of these two matters, the court finds that the first is the more significant. Her failure to take the requested test raises concerns about her motives for not doing so, and also raises concerns about her views of the importance of following court procedures. CT Page 13956
In support of her motion and as evidence of the change in circumstances justifying a modification of visitation, Ms. Dykstra points to her work and community involvement, her acquisition of a home, and her development of a significant support network in the area since the abduction. All of these are convincing arguments in her favor. In addition, she asserts that, if she were to abduct Jacob again, she would damage Daniel and her ability to parent Daniel. This argument is compelling, given the strength of her devotion to that child.
Jacob will be seven years old in December. He attends first grade and does well in school. By everyone's report, he is a delightful, active, and engaging child. He does not know how to use a telephone sufficiently to complete a call to his father's home from another state without adult help. He does not have a good relationship with his mother. He is not responsive to her efforts to maintain consistent discipline and control over his behavior during visitation, although Daniel is. Ms. Dykstra is tentative about disciplining him for fear that doing so will create conflict with Mr. Jezouit. Jacob, in short, does not see Lynne Dykstra as his mother in any meaningful sense of that word. There is no evidence that David Jezouit has done much to foster a relationship between the mother and the child, although he has done some things toward that end.
It is in the best interest of Jacob Jezouit that he live in a safe, secure. and healthful environment free from fear on his part or on the part of those with whom he lives that he will be abducted. It is in the best interest of Jacob that he continue for the present to enjoy the positive, loving, supportive, and nurturing relationship that he enjoys with his father and in his father's home.
However, it is also in the best interest that, during his childhood, he have the opportunity to develop a meaningful, unrestrained, and normal relationship with his mother, built upon mutual love and mutual respect. Finally, it is in his best interest that his father participate in nurturing that relationship.
It is not in the best interest of Jacob, however, that he have unsupervised visitation with his mother at this time. It is in his interest that he enjoy such visitation in the future, and indeed in the not very distant future. This court will not order CT Page 13957 that unsupervised visitation occur immediately or without conditions. First, although the court is convinced that Ms. Dykstra has no present motive or intention to abduct the child again, the court is not convinced that such an event is impossible. If she were to abduct the child, he would be without the skills or maturity to enable him effectively to seek help. The risk is too great now.
Secondly, it is undisputed that Jacob presently has no meaningful relationship with his mother, and that his behavior in her presence is lacking in the warmth and respect common to a normal parent-child relationship. It will take time and some care on the part of both parties for that relationship to develop.
Accordingly, in consideration of these findings and the relevant law, the court will enter orders to gradually increase the amount of visitation and to gradually relax the conditions under which it occurs, subject to the conditions set forth herein. The court orders as follows:
1. Lynne Dykstra will submit to not less than three random drug and alcohol screens during the next twelve months, one of which must be within one month hereof The family relations officer assigned to this case will determine when to request the testing and will notify Ms. Dykstra by telephone. The test must be completed within eighteen hours of Ms. Dykstra's receipt of telephone notification. Test results will be made available to family relations and each counsel. Any test which is positive for alcohol or illicit drugs will result in further orders requiring Ms. Dykstra to undergo substance abuse evaluation and or treatment. A positive result will also require a review of these orders. The court will retain jurisdiction.
2. Lynne Dykstra will continue to have parenting opportunities consisting of two hours per week of supervised visitation with Jacob at AMPS from the date of this order through January 17, 1999. Daniel should be present for one of the last three weeks of said visitation.
3. David Jezouit will instruct Jacob about the importance of the child's cooperation with and obedience to his mother, Ms. Dykstra, during visitation, and the parties will confer at the conclusion of each visitation to determine whether there are matters requiring Mr. Jezouit's reinforcement of discipline with the child subsequent to the visitation. CT Page 13958
Both parties will communicate with one another regarding any such issues.
4. David Jezouit will arrange for Jacob to be taken to Ms. Dykstra's home for visitation on Christmas Eve between 6 and 8 p. m. and on New Years Day from 1 to 4 p. m. These visits shall be supervised by Mr. Jezouit, who may be accompanied by another adult of his choice. It is the intent of this order that the child have the opportunity to be in his mother's home as a social guest with the obvious support of his father, so that the child can become familiar with the location and be comfortable there.
5. Ms. Dykstra shall have parenting opportunities with Jacob in her home on Saturday afternoons from 2 to 5 p. m. commencing on January 24, 1999 and continuing until May 23, 1999. These visits shall be supervised by a person chosen by the parties, who shall submit to mediation with family relations if they are unable to agree on a supervisor prior to April 10, 1999. She shall also have supervised visitation with Jacob at her home on Good Friday for two hours to be arranged by the parties. She shall have supervised visitation between 2 and 5 p. m. on Mother's day in lieu of visitation on May 16, 1999. The supervisor shall be instructed by the parties that he or she is required to foster the development of an independent relationship between mother and child.
6. Ms. Dykstra shall have unsupervised visitation at her home with Jacob from 2 to 5 p. m. on Saturdays commencing on May 30, 1999, provided that she has not had any substance screens positive for alcohol or illicit drugs, and provided further that Jacob shall have learned from both his parents prior to that time how to independently use the telephone to make a long distance call using an area code and how to use the 911 emergency call system. He shall be taught these things as part of his ordinary development, and neither party shall instruct him that he is learning the numbers because of a necessity to fear his mother, but rather that this is information that all children need to secure their safety. The visitation set forth herein shall not be required to be held exclusively at Ms. Dykstra's home, but it shall begin and end there unless otherwise arranged by the parties. Ms. Dykstra shall be available to Mr. Jezouit by telephone at all times during such visitation, and he shall be entitled to call his son once during each such visitation. CT Page 13959
7. Ms. Dykstra shall have unsupervised overnight visitation with Jacob at her home on alternate weekends from 2 p. m. Saturday until 5 p. m. Sunday, commencing August 22, 1999, subject to the same conditions set forth in paragraph 6 hereof.
8. Ms. Dykstra shall not remove Jacob Jezouit from the state of Connecticut at any time for any reason without prior order of the court.
Mr. Jezouit's motion for attorneys fees is denied.
Orders shall enter accordingly. All other orders remain in effect.
BY THE COURT,
GRUENDEL, J.